UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
LESLIE SMITH, ALESSANDRO PAPA,
MARGARET SANZ and KARL
JUNKERSFELD,

       Plaintiffs,  **REPORT AND RECOMMENDATION**

  - v -

             09-CV-1655 (KAM)(VVP)

MYRTLE OWNER, LLC, DONALD
CAPOCCIA, BRANDON BARON, and
JOSEPH FERRARA,

       Defendants.
-------------------------------------------------------x
DALLAS BROADWAY and VINITA
GUPTA,

       Plaintiffs,  09-CV-3809 (KAM)(VVP)

  - v -

MYRTLE OWNER, LLC, DONALD
CAPOCCIA, BRANDON BARON, and
JOSEPH FERRARA,

       Defendants.
-------------------------------------------------------x
DANIEL FORSTER and BENJAMIN
BLOCK,

       Plaintiffs,

             09-CV-5484 (KAM)(VVP)

  - v -

MYRTLE OWNER, LLC, DONALD
CAPOCCIA, BRANDON BARON, and
JOSEPH FERRARA,

       Defendants.
-------------------------------------------------------x
MARLENA KAPLAN,

       Plaintiff,

             10-CV-0326 (KAM)(VVP)

  - v -

MYRTLE OWNER, LLC, DONALD
CAPOCCIA, BRANDON BARON, and
JOSEPH FERRARA,

       Defendants.
-----------------------------------------------------------x
HUROL SENGUL,
       Plaintiff,

            10-CV-0395 (KAM)(VVP)

   - v -

MYRTLE OWNER, LLC, DONALD
CAPOCCIA, BRANDON BARON, and
JOSEPH FERRARA,

       Defendants.
-----------------------------------------------------------x
HESOO KIM and STEVEN MOI,

       Plaintiffs,

            10-CV-0534 (KAM)(VVP)

   - v -

MYRTLE OWNER, LLC, DONALD
CAPOCCIA, BRANDON BARON, and
JOSEPH FERRARA,

       Defendants.
-----------------------------------------------------------x

POHORELSKY, Magistrate Judge:

  Judge Matsumoto has referred these matters to me for a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B), concerning a joint motion in the six above-captioned actions seeking the dismissal of the complaints. The sole claim in each complaint is predicated upon the Interstate Land Sales Full Disclosure Act, 15 U.S.C. § 1701, *et. seq.* (the "Act," "the statute," or "ILSA"), and the defendants have moved to dismiss on the ground that the statute does not apply to them. For the reasons that follow, it is respectfully recommended that the motion be denied.

## BACKGROUND

These six actions concern the purchase of units in the Toren Condominum, a condominium development in downtown Brooklyn that consists of a 37-story high-rise residential building, commercial space and parking garage. The plaintiffs are various individuals who executed purchase agreements for condominium apartments in the Toren Condominium. The defendants in each case are Myrtle Owner, LLC ("the developer"), as well as Donald Capoccia, Brandon Baron, and Joseph Ferrara, who are all principals of Myrtle and who are alleged to have executed certifications indicating that they have primary responsibility for compliance with the laws and regulations as may be applicable to the sale of units in the Toren Condominium.

The Complaints allege that the defendants violated ILSA by failing to file a statement of record with the Department of Housing and Urban Development (or "HUD") and by not providing the plaintiffs with a HUD property report containing certain disclosures required by the Act. The plaintiffs seek rescission of their purchase agreements and recovery of their purchase deposits, as well as interest, costs, attorney's fees and other costs associated with the purchase of the condominium units.

The defendants concede that they did not comply with the Act's disclosure requirements. The only issue raised by the defendants' motion is whether the Act applies to the sale of units in high-rise condominiums like the Toren Condominium. As discussed further below, the court concludes that the statute applies to the transactions at issue here, and that the motion to dismiss should therefore be denied.

## I. LEGAL STANDARDS ON A MOTION TO DISMISS

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal, not the factual, sufficiency of a complaint. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *abrogated on other grounds by Harlow v. Fitzgerald*, 457 U.S. 800 (1982); *Sims v. Artuz*, 230 F.3d 14, 20 (2d Cir. 2000) ("At the Rule 12(b)(6) stage, '[t]he issue is not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims.'") (quoting *Chance v. Armstrong*, 143 F.3d 698, 701 (2d Cir. 1998)). At this stage, the court accepts as true all factual allegations in the complaint, views the complaint in the light most favorable to the plaintiff, and draws all reasonable inferences in his favor. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002); *Gregory v. Daly*, 243 F.3d 687, 691 (2d Cir. 2001). Even so, conclusory allegations or conclusions of law "couched" as factual allegations need not be accepted as true. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To avoid dismissal, the plaintiffs must plead facts that "nudg[e] their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570; *Iqbal*, 129 S. Ct. at 1949 (requiring factual allegations that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged"). Courts may also consider documentary exhibits or written instruments annexed to the complaint, documents integral to the parties' case and on which the complaint relies heavily, and matters subject to judicial notice. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (citing 5B Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* §1357 (3d ed. 2004 and Supp. 2007)); *ATSI Commc'ns, Inc. v. Shaar Fund*, 493 F.3d 87, 98 (2d Cir. 2007)*; Int'l Audiotext Network, Inc. v. AT&T*, 62 F.3d 69, 72 (2d Cir. 1995); *Kramer v. Time Warner Inc.*, 937 F.2d 767, 773 (2d Cir. 1991); *see also* Fed. R. Civ. P.

10(c).

## II.  THE INTERSTATE LAND SALES FULL DISCLOSURE ACT

ILSA was enacted as part of the Housing and Urban Development Act of 1968, which was aimed at ensuring suitable housing for low income families. *See Winter v. Hollingsworth Properties, Inc.*, 777 F.2d 1444, 1446 (11th Cir. 1985). ILSA itself is an anti-fraud statute "designed to prevent false and deceptive practices in the sale of unimproved tracts of land by requiring developers to disclose information needed by potential buyers." *Flint Ridge Development Co. v. Scenic Rivers Assoc. of Oklahoma*, 426 U.S. 776, 778 (1976); *see also Kemp v. Peterson*, 940 F.2d 110, 112 (4th Cir. 1991). The Act requires developers of land to register with the Secretary of Housing and Urban Development and make certain written disclosures to prospective purchasers of "lots" within a "subdivision." Specifically, the statute prohibits nonexempt developers of a subdivision from using "any means or instruments of transportation or communication in interstate commerce, or of the mails . . . to sell or lease any lot unless a statement of record with respect to such lot is in effect [and]. . . a printed property report . . . has been furnished to the purchaser or lessee in advance of the signing of any contract or agreement . . . ." 15 U.S.C. § 1703(a)(1). The statute also prohibits developers from selling or leasing any lot using a statement of record or property report that contains an untrue statement of material fact or from displaying or delivering advertising or promotional materials that are inconsistent with information to be disclosed in the property report. *Id.* The Act provides purchasers with a civil right of action in federal district court for rescission of purchase agreements with developers who fail to comply with the Act's requirements. *Id.* at § 1709.

While the statute imposes the above requirements on the promotion and sale of "lots" within

a "subdivision," the term "lot" is not defined in the statute. The statute defines "subdivision" as "any land which is located in any State or in a foreign country and is divided or is proposed to be divided into lots, whether contiguous or not, for the purpose of sale or lease as part of a common promotional plan." 15 U.S.C. § 1701(3). Thus, the primary question raised by this motion is whether the term "lot" encompasses condominium units in apartment buildings such that these defendants were required to comply with ILSA's provisions.

### III. STATUTORY INTERPRETATION OF THE TERM "LOT" IN THE STATUTE

Since the statute was adopted, HUD has consistently been of the view that the term "lot" applies to units in a condominium building. Deferring to the administrative agency's view, the courts have followed suit. Thus, in one of the earlier decisions on this issue by the only Court of Appeals to discuss it, the Eleventh Circuit found that the agency's interpretation was reasonable and consistent with the text, history, and policy goals of the legislation. *Winter*, 777 F.2d at 1447-48 (11th Cir. 1985). Other federal courts have followed suit. *See, e.g., Nu-Chan, LLC v. 20 Pine Street LLC*, No. 09-cv-477, 2010 WL 3825734, at *2-*3 (S.D.N.Y. Sept. 30, 2010); *An v. Leviev Fulton Club LLC*, No. 09-cv-1937, 2010 WL 3291402, at *1 (S.D.N.Y. Aug. 10, 2010); *Cruz v. Leviev Fulton Club, LLC*, 711 F. Supp. 2d 329, 331 (S.D.N.Y. 2010); *Beauford v. Helmsley*, 740 F. Supp. 201, 209 (S.D.N.Y. 1990); *see also Giralt v. Vail Village Inn Assocs.*, 759 P.2d 801, 805-06 (Colo. Ct. App. 1988). Some cases proceed on the assumption that the statute applies and address the applicability of certain exemptions to condominiums. *See Long v. Merrifield Town Center Ltd. Partnership*, 611 F.3d 240 (4th Cir. 2010); *Markowitz v. Northeast Land Co.*, 906 F.2d 100, 102 (3d Cir. 1990); *Romero v. Borden East River Realty LLC*, No. 09-cv-665, Slip Op. at 8 (E.D.N.Y. Mar. 11, 2010); *Bacolitsas v. 86th & 3rd Owner, LLC*, No. 09-cv-7158, 2010 WL 3734088, at *4

(S.D.N.Y. Sept. 21, 2010); *Bodansky v. Fifth on the Park Condo, LLC*, 732 F. Supp. 2d. 281, 285 (S.D.N.Y. 2010) ("The parties agree that [the condominium] is subject to certain of the Act's provisions").[1] The court is not aware of any contrary authority holding the statute inapplicable to condominiums.[2]

In *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842-43 (1984), the Supreme Court set forth the approach to be taken by the courts in interpreting a statute that is administered by an administrative agency:

> If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.

Thus, the first step in this Court's analysis must be to determine whether Congress has expressed an unequivocal intent as to the applicability of the statute to condominiums. This analysis is guided by traditional principles of statutory construction. The court will look to the text of the statute, but will do so "not in isolation from the context of the whole Act but [look] to the provisions of the whole law, and to its object and policy." *United States v. Kozeny*, 541 F.3d 166, 171 (2d Cir. 2008) (quoting *United States v. Pacheco*, 225 F.3d 148, 154 (2d Cir. 2000))

---

[1] *Romero* and *Bodansky* are currently on appeal before the Second Circuit. *See Romero v. Borden East River Realty LLC* (E.D.N.Y. 2010), *appeal docketed*, No. 10-1147 (2d Cir. Mar. 29, 2010); *Bodansky v. Fifth on the Park Condo, LLC*, (S.D.N.Y. 2010), *appeal docketed*, No. 10-720 (2d Cir. Feb. 22, 2010). The issues on appeal concern the construction and application of the "hundred lot exemption" to the statute, 15 U.S.C. § 1702(b)(1). Briefing and oral argument is complete and the matters are currently *sub judice*.

[2] *Cf. Becherer v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 127 F.3d 478, 481 (6th Cir. 1997) (recognizing "condominium units are generally considered 'lots' within the meaning of [ILSA]" but holding individual interests in nonresidential hotel 'condominiums' subject to use restrictions were not).

(internal quotation marks omitted). Second, "[i]f the text of the statute itself is not clear, however, a court applying the statute may consult the legislative history to discern the legislative purpose as revealed by the history of the statute." *Id.* at 171 (internal quotation marks and citation omitted); *see also Chevron*, 467 U.S. at 845 (examining the "legislation and its history" to determine if Congress had expressed a clear intent on the interpretation of a provision of a statute). It is only in the instance where Congress's intent is not clear that the court need look to the administrative agency's interpretation of the statute. After conducting this analysis, below, this court agrees with HUD, *Winter*, and subsequent cases that ILSA is applicable to high-rise condominium buildings.

### A. Text and Structure of the Statute

Both parties recognize that the statute neither defines the word "lot" nor addresses its application to condominiums directly. The defendants first argue that the contextual use of the term "lot" in the statute and the administrative regulations demonstrates that the Act was only intended to apply to an interest in land. They argue that inasmuch as the term "lot" is used in some parts of the Act in a context that could not include a condominium unit, such term should not be construed differently in other parts of the Act. *See Firestone v. Howerton*, 671 F.2d 317, 320 n.6 (9th Cir. 1982) ("We will follow the well known maxim of statutory construction that, when the same terms are used in a different section of the statute, they receive the same meaning"). The defendants point to an exemption in the statute for a lot on which a mobile home is to be erected, 15 U.S.C. § 1702(b)(6), and one for lots in a subdivision where each lot is at least twenty acres, *id.* at § 1702(b)(4). Since these exemptions could only be employed by developers who sell "lots" that are located on land, the defendants argue, interpreting "lot"

broadly to include condominium units would require construing the term differently in different parts of the statute. The defendants' reasoning is flawed. It proceeds on the assumption that the word "lot" must be construed in such a way as to limit it to only those pieces of property that could qualify for every exemption in the statute. Such a narrow reading runs contrary to the principle that this remedial statute should be construed broadly. *See Olsen v. Lake Country Inc.*, 955 F.2d 203, 205 (4th Cir. 1991). There is simply no basis for concluding that every exemption listed in the statute must be potentially available to every subdivision subject to the Act. It does not require different definitions of the word "lot" to make certain exemptions available to some subdivisions, while recognizing that they will never be available to others.[3]

The defendants also argue that Congress intended to exclude condominiums from the scope of the Act because the Act requires the property report to include information that has no application to condominium units. *See* 15 U.S.C. § 1707. The defendants single out the following mandated disclosures as evidence of Congress's intent: (1) statement with the heading "Risks of Buying Land," (2) disclosures as to "oil, gas, and mineral rights," (3) a disclosure as to road access to and within a subdivision, (4) disclosures as to the source of each individual's water supply, and (5) a "General Topography" disclosure as to "the major physical characteristics of the land in the subdivision." *See* Defs Mem. in Supp. of Mot. to Dismiss ("Defs MTD"), at 10 (citing 24 C.F.R. §§ 170.107-115). In contrast, the defendants argue, the Act does not require disclosure of significant information of concern to condominium purchasers that is required to be disclosed under New York law. *See* Defs MTD, at 11 (citing New York's

---

[3] It is worth noting that a number of the exemptions in the statute *are* potentially applicable to high-rise condominiums including the "improved lot" exemption discussed above and the exemption for a subdivision containing fewer than 100 lots. *See* 15 U.S.C. § 1702(a)(2), (b)(1).

Martin Act, Section 352-e of the General Business Law). While certain disclosures may not be relevant or only partially relevant to condominium sales, the regulations specifically state that the disclosures required by the property report need only be included where applicable. *See* 24 C.F.R. § 1710.200 (developer should note which disclosures are not applicable and provide additional explanations if necessary to protect purchasers). Also, as pointed out by the plaintiffs, many required disclosures in the property report concerning the nature of the real estate, type of ownership, completion dates, utilities, etc. *are* applicable to and relevant to condominiums. *See* Pls. Opp'n to MTD, at 15-16 (citing 24 C.F.R. §§ 1710.107-116).

The defendants also argue that a conflict between New York law and the Act's requirements further evidence Congress's intent not to include high-rise condominiums within its scope. The statute requires the purchase agreement to include a "description of the lot which makes such lot clearly identifiable and which is in a form acceptable for recording" by the jurisdiction in which the lot is located. 15 U.S.C. § 1703(d)(1). Under New York law, the conveyance of a condominium unit cannot be recorded unless the deed is accompanied by a report that includes the tax lot designation. N.Y. Real Property Law § 333(1-e)(ii)(3). New York will not assign such tax lot numbers until certain prerequisites are met, including a requirement that purchase agreements have been executed for a minimum of 15% of the units being offered for sale and that the condominium offering plan is declared effective. *See* Defs MTD. at 8-10 (citing 13 N.Y. Comp. Codes R. & Regs. § 20.3(q)(3); Capoccia Decl., Ex. H). Therefore, the defendants contend, Congress could not have intended for ILSA to apply to condominium units.

This argument is unconvincing for several reasons. First, the difficulties in disclosure compliance are unique to New York, and there is no indication that all condominium buildings throughout the country have the same problems. Conflicts between New York's property recording practices and the statute's requirements are thus not a basis for finding a congressional intent to exclude the sale of condominium units from the Act. Moreover, it has been found that condominium sales can be recorded under New York law for the purposes of satisfying ILSA. *See Bacolitsas*, 2010 WL 3734088, at *6 ("a contract for the sale of a condominium, if it meets the requirements of New York law, may be recorded") (citing N.Y.R.P.L. § 294(1)). Finally, and more importantly, the regulations promulgated by HUD contemplate situations where the sales contract cannot be recorded at the time of sale. *See* 24 C.F.R. § 1710.109(d)(iii)-(iv). If the purchase agreement cannot be recorded at the time of sale, the developer must include a statement in the purchase agreement warning the buyer of the reasons for and the consequences of the inability to record the sale. *Id.*

For their part, the plaintiffs argue that the text of an exemption in the statute demonstrates that Congress intended that ILSA apply to condominiums. In 1978, Congress amended the statute to add the word "condominium" to an existing exemption. As amended, the provision exempts "the sale or lease of any improved land on which there is a residential, commercial, condominium, or industrial building, or the sale or lease of land under a contract obligating the seller or lessor to erect such a building thereon within a period of two years[.]" 15 U.S.C. § 1702(a)(2). Congress's stated rationale for adding the word "condominium" was that "present

HUD regulations do not provide an exemptions [sic][4] for condominiums." S. Rep. No. 95-871, at 97 (1978), *reprinted at* 1978 U.S.C.C.A.N. 4773, 4868, 1978 WL 8567. For some courts, the "obvious" conclusion to be drawn from this amendment is that "Congress was aware of, and approved of, HUD's construction of the Act," *Winter*, 777 F.2d at 1448-49, as Congress would not have exempted certain types of condominiums from the reach of the statute if it did not agree with and adopt HUD's view that the statute otherwise covered condominiums. *See Nu-Chan, LLC*, 2010 WL 3825734, at *3 ("1978 addition of 'condominium' to the 'improved lot' exemption (without any other revisions that might have limited the Act's application to condominiums), strongly suggest that Congress has acquiesced to HUD's interpretation"). This legislative enactment may not provide a conclusive answer to the question of Congress's intent regarding ILSA's applicability to high-rise condominiums, but when viewed in the context of the legislative history and policies of the statute, discussed below, the reasonable inference to be drawn is that Congress's adoption of this exemption signals its acceptance of HUD's view. Thus, while not clear, the text of the statute favors a construction of the term "lot" that would include units in high-rise condominium buildings.

**B. Legislative History**

While the history of the statute indicates that Congress was *primarily* concerned with the sale of "undeveloped land," S. Rep. No. 90-1123, at 109 (1968), there is no evidence that Congress clearly intended that ILSA would not apply to high-rise condominium buildings. The defendants argue that statements in a House Report from 1979 demonstrate that Congress did not

---

[4] It unclear whether the phrase "an exemptions" should read as "an exemption" or "any exemptions."

wish to extend ILSA's protections to condominium purchasers. This report summarized amendments to several housing-related statutes, including ILSA, that were ultimately contained in a single bill. In discussing revisions to the Condominium Act of 1979, the committee noted that there were concerns as to "developer abuses with respect to condominium development and conversions" but that it did not feel it necessary to establish "national minimum standards of disclosure and protection." H.R. Rep. No. 96-154, at 28, 29 (1979), *reprinted in* 1979 U.S.C.C.A.N. 2317, 1979 WL 10229.

This statement, however, was not part of Congress's discussion of the amendments to ILSA that were contained in that bill. As discussed in the Eleventh Circuit's decision in *Winter*, the concerns addressed by the proposed amendments to the Condominium Act of 1979 shed little light on Congress's intent regarding the applicability of ILSA to condominiums:

> First, this legislative history is not connected to [ILSA], but instead is primarily aimed at the problem of rental housing conversions. Second, the history discusses the sale of existing condominiums as well as the development of new ones. Most of these transactions would be exempt from [ILSA], and the discussion of adequate state and local safeguards was therefore appropriate. Finally, the scope of [ILSA's] coverage of condominiums is very narrow, applying only when sales exceed specified numbers of lots . . . not applying to sales that are solely intrastate, see 15 U.S.C. § 1702(b)(7) (1982), and exempting sales to persons in the land sales or construction businesses . . . . Congress' refusal to enact a more wide-ranging federal condominium statute does not mean that it intended to cast doubt on HUD's interpretation of [ILSA].

*Winter*, 777 F.2d at 1449 n.13. This analysis in *Winter* is a persuasive rebuttal to the defendants' reliance on this bit of legislative history.

On the other hand, the Eleventh Circuit found evidence in the legislative history that the statute should be read broadly and should not be limited to the sale of land. The court noted that while the statute was intended to "protect purchasers from unscrupulous sales of undeveloped home sites" in rural areas, "Congress did not draft the statute to apply solely to raw land, but

made it applicable to the sale or lease of lots. . . . The legislative history also employs the terms 'land' and 'real estate.' Although Congress may have been primarily concerned with the sale of raw land, it struck a balance by making the statute applicable to *all* lots[.]" *Winter*, 777 F.2d at 1447. Thus, the court concluded, the legislative history's use of the terms "lot," "land," and "real estate" in discussing the statute demonstrates that it should be construed broadly to "refer to interests in realty." *Id.* at 1448. Again, although the legislative history provides no clear answer, it does not favor a narrow reading of the Act that would preclude its applicability to high-rise condominium buildings.

C. **Deference to Administrative Agency's Interpretation**

As neither the text of the statute nor the legislative history provide a clear answer concerning the construction of the term "lot," "the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Chevron*, 467 U.S. at 843. The Supreme Court has "long recognized that considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer, and the principle of deference to administrative interpretations." *Id.* at 844. The statute rests "authority and responsibility for administering [the statute] in the Secretary of Housing and Urban Development . . . including functions, duties, and powers with respect to investigating, hearing, determining, ordering, or otherwise acting as to any work, business, or matter under this chapter." 15 U.S.C. § 1715(a). Moreover, the statute provides the Secretary of HUD with the authority to issue "such rules and regulations and such orders as are necessary or appropriate to the exercise of the functions and powers conferred upon him elsewhere in this chapter. For the purpose of his rules and regulations, the Secretary may classify persons and matters within his

jurisdiction and prescribe different requirements for different classes of persons or matters." *Id.* at § 1718.

HUD's position has consistently been that "lot" applies to units in a condominium building and sought to solidify this view in formal regulations.[5] In 1973, after a formal notice and comment period and a public hearing, HUD adopted regulations that defined the word "lot" as "any portion piece, division, unit, or undivided interest in land if such interest includes the right to the exclusive use of a specific portion of the land." Land Registration, 24 C.F.R. § 1710.1(h) (1973).[6] In the preamble to those regulations, HUD noted that "[c]onsiderable comment was received with respect to the proposed definition of lot" and that the coverage of condominiums was "mentioned most frequently." *See* Land Registration, Formal Procedures, and Advertising Sales Practices, and Posting of Notices of Suspension, 38 Fed. Reg. 23866 (Sept. 4, 1973). In the preamble, HUD affirmed its long-standing position that the Act applies to condominiums. The agency explained that,

> condominiums carry the indicia of and in fact are real estate, whether or not the units therein have been constructed. A condominium is accordingly viewed by OILSR as equivalent to a subdivision, each unit being a lot. . . . [T]he right to condominium space is a form of ownership, not a structural description.

---

[5] The Office of Interstate Land Sales Registration ("OILSR") is designated by the Secretary of HUD to administer the Act. *See Winter*, 777 F.2d at 1447 n. 9 (citing 15 U.S.C. § 1715(a) (1982)). OILSR first expressed its view that the Act applies to condominiums shortly after the statute was adopted. *See* OILSR Exemption Advisory Opinion, No. 1710.1(k) at p. 5 (Aug. 20, 1972) (quoted in *Winter v. Hollingsworth Properties, Inc.*, 587 F. Supp. 1289, 1291 (S.D. Fla. 1984)). This soon became the "accepted view" in the courts and in secondary source materials. *See Nargiz v. Henlopen Developers*, 380 A.2d 1361, 1364 (Del. 1977) (citing authorities); *Schatz v. Jockey Club Phase III, Ltd.*, 604 F. Supp. 537, 540-41 (S.D. Fla. 1985).

[6] The definition as currently amended adds the clause "located in any State or foreign country" after the first use of the word "land." *See* 24 C.F.R. 1710.1(b).

*Id.* HUD also noted that the legislative history on this issue was inconclusive and that most high-rise metropolitan condominiums would be exempt since many are completed within two years after the contract for sale is signed. *Id.* HUD has consistently adhered to this view. *See* Condominium and Other Construction Contracts, 39 Fed. Reg. 7824 (Feb. 28, 1974); Interstate Land Sales Registration Program, 61 Fed. Reg. 13596-01, 13602 (Mar. 27, 1996).

The defendants argue that the Eleventh Circuit's decision in *Winter* and the courts that follow it have erred in giving "great deference" to HUD's interpretation of the statute since HUD's policy is not expressed in formal regulations subject to notice and comment. *See Winter*, 777 F.2d at 1448. While HUD has expressed this policy several times in opinion letters, it most significantly expressed it in the interpretive guidance in the preamble quoted above. That guidance, published concurrently with formal regulations, clarified the scope of the term "lot" as mentioned in the statute and defined in the regulations. "An agency's interpretation of its own regulations is 'controlling unless plainly erroneous or inconsistent with the regulation.'" *United Airlines, Inc. v. Brien*, 588 F.3d 158, 172 (2d Cir. 2009) (quoting *Auer v. Robbins*, 519 U.S. 452, 461 (1997)). Moreover, where *Chevron* deference is not warranted, courts should still give "respect" to administrative interpretations of a statute in "opinion letters- like interpretations contained in policy statements, agency manuals, and enforcement guidelines" to the extent "that they are persuasive." *Christensen v. Harris County*, 529 U.S. 576, 587 (2000) (citing *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)). Deference to the agency's interpretive guidelines is especially appropriate here where those guidelines were issued concurrently with regulations that were adopted after a public hearing and notice and comment period.

HUD's interpretation is neither "plainly erroneous or inconsistent" with the regulation nor an unpersuasive interpretation of the statute. First, HUD's interpretation of its own definition of "lot" is more than reasonable. The regulations expansively define "lot" as "*any* portion, piece, division, unit, or undivided interest in land . . ." 24 C.F.R. § 1710.1(b) (emphasis added). HUD's interpretive guidance clarifying this definition to encompass condominium apartments is neither plainly erroneous nor inconsistent with the regulation.

Second, the defendants' arguments that HUD's interpretation of the term "lot" is contrary to the statute are also unconvincing. They argue that the preamble to the 1973 regulations does not provide a sound analytic basis for extending the coverage of the Act to high-rise condominiums. In the preamble, HUD does not distinguish between different types of condominiums, referring both to coverage of "completely horizontal developments" as well as condominiums in metropolitan areas. 38 Fed. Reg. 23866 (Sept. 4, 1973). The defendants argue that the failure to provide any rationale for treating these types of property equally is conclusory and ultimately unpersuasive. They argue that HUD does not indicate how the Act is an appropriate or effective means of protecting condominium purchasers nor how state and local regulation schemes are inadequate.[7] However, as discussed above, Congress, like HUD, used the

---

[7] Indeed, the defendants point out that given the comprehensive regulatory regime governing condominium offerings under New York's Martin Act, Section 352-e of the General Business Law, "it is understandable why Congress" left regulation of condominiums to the states. Defs MTD, at 13. As discussed in the text above, the legislative history of ILSA does not indicate that Congress left it to the states to adopt comprehensive disclosure requirements for condominiums. The statute does allow the Secretary of HUD to certify a State if it determines that its laws and regulations provide substantially equivalent protections to prospective purchasers or lessees of nonexempt lots. *See* 15 U.S.C. § 1708 and 24 C.F.R. § 1710.500 *et seq*. Neither party has indicated that New York has applied to HUD for certification or that the Secretary has otherwise considered New York for such certification. *See Cranberry Hill Corp. v. Shaffer*, 629 F. Supp. 628, 633 (N.D.N.Y. 1986) ("A state must actively seek and obtain written certification by HUD before its regulation will be deemed approved by Congress").

terms "land" and "real estate" interchangeably in referring to the statute's application. There is no reason to believe that purchasers of condominium units are not equally susceptible to the unscrupulous sales practices of "get rich quick promoters" as purchasers of raw land. *See* S. Rep. No. 90-1123, at 109 (1968) (expressing concern as to "get rich quick promoters who make glowing promises of fully developed 'dream communities'"); *see also Winter*, 777 F.2d at 1448 ("A fraudulent out-of-state sale of land is not rendered any less fraudulent if the condominium form of ownership is utilized").

The defendants also argue that HUD's adoption of regulations that define "lot" broadly to include condominium buildings exceeds its administrative mandate because it is contrary to "the will of Congress as expressed by the statute." Defs MTD, at 18 (quoting *Manhattan Gen. Equip. Co. v. Commissioner of Internal Revenue*, 297 U.S. 129, 134 (1936)). As discussed above, Congress's intent on this issue is not clear. Two things as to Congress's intent are clear, however. First, Congress entrusted HUD with administering the statute and promulgating regulations in furtherance of it. Second, the statute is meant to be construed broadly. Modeled after the Securities Act of 1933, ILSA was intended to "protect purchasers in interstate sales" where state law and federal enforcement mechanisms had been found to be inadequate. *Husted v. Amrep Corp.*, 429 F. Supp. 298, 303 (S.D.N.Y. 1977). In accordance with this remedial purpose, the statute should be read "broadly to effectuate [the goal of prohibiting fraud and to protect purchasers of land which is part of a common promotional scheme]." *Olsen,* 955 F.2d at 205 (4th Cir. 1991); *Schatz*, 604 F. Supp. at 541 (the Act "should be construed not technically, but flexibly to effectuate its remedial purposes"); *Beauford*, 740 F. Supp. at 209 ("The protections afforded by the Act, [are] to be construed broadly in accord with the remedial

purposes of the legislation") (citing *Timreck v. Munn*, 433 F. Supp. 396 (N.D. Ill. 1977)). Deferring to HUD's long-standing decision to apply ILSA to condominiums is both persuasive and consistent with this policy goal.

## CONCLUSION

In the wake of the burst of the "housing bubble," the Act "has become an increasingly popular means of channeling buyer's remorse into a legal defense." *Stein v. Paradigm Mirasol, LLC*, 586 F.3d 849 (11th Cir. 2009). Nevertheless, the court is convinced by the history and policies underlying the statute as well as HUD's interpretation of it that the Act applies to the Toren Condominium. Accordingly, the undersigned recommends that the motion to dismiss be denied.

\* \* \* \* \* \*

Any objections to the Report and Recommendation above must be filed with the Clerk of the Court within 14 days of receipt of this report. Failure to file objections within the specified time waives the right to appeal any judgment or order entered by the District Court in reliance on this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see, e.g., Thomas v. Arn*, 474 U.S. 140, 155, 106 S.Ct. 466, 474, 88 L.Ed.2d 435 (1985); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010); *Frank v. Johnson*, 968 F.2d 298 (2d Cir.), *cert. denied*, 113 S. Ct. 825 (1992).

Respectfully recommended,

*Viktor V. Pohorelsky*
VIKTOR V. POHORELSKY
United States Magistrate Judge

Dated: Brooklyn, New York
February 9, 2011